IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCUS M. ALLEN,

   Plaintiff,

v.

TUNECORE, *et al.*,

   Defendants.

Civil Action No.: SAG-24-1972

**MEMORANDUM**

On July 3, 2024, Plaintiff Marcus M. Allen, currently confined at Jessup Correctional Institution ("JCI"), filed a civil complaint, which was construed as a civil rights complaint filed pursuant to 42 U.S.C. § 1983. ECF No. 1.[1] Allen filed a Motion to Proceed in Forma Pauperis, which will be granted. ECF No. 2. However, for the reasons that follow, Allen's Complaint cannot proceed and will be dismissed.

The Court is required to screen Allen's Complaint before it may proceed, and must dismiss any part of the Complaint that, as relevant here, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a *pro se* plaintiff must still carry "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

   I.   Complaint Allegations

---

[1] Allen included two identical copies of his Complaint, one of which was been docketed as a supplement. *See* ECF No. 1, 1-1. Although the documents appear to be identical, the Court will reference only the Complaint docketed at ECF No. 1.

Allen appears to name several individuals and entities: Tunecore, Dennis Ladegaillerie, Universal Records, Kelly Clarkson, Bonnie Hammer, DistroKid, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Warden of WCI Shane Weber, WCI, Warden of Maryland Correctional Training Center ("MCTC") Bethany Cornchia, and DPSCS. ECF No. 1 at 5-6, 10. However, it is unclear how these individuals or entities are involved in the allegations Allen seeks to raise, and which ones are actual defendants. The Court attempts to summarize Allen's allegations below.

Allen broadly alleges that "DPSCS knowingly conspired on several different [occasions] … to bring down the plaintiff['s] level, status and brand in this Entertainment industry." *Id.* at 1. He then alleges that moving him from the Patuxent Institution "[eligible] person" program, transferring him to MCTC, and investigating a frivolous [prison rape elimination act] claim, among other things, evidence a conspiracy against him. *Id.* at 1-2. He states that, based on this, he is suing MCTC for defamation. *Id.* At some point, Allen was transferred to WCI, where he alleges that there was an attempt to poison him using "galikers milk." *Id.* at 3. He states that his transfer to WCI was retaliatory, segregation was used as punishment, and he experienced physical and mental abuse. *Id.* He does not explain who retaliated against, punished, or abused him, nor does the explain how the retaliation, punishment, and abuse occurred.

Allen states that he was recently transferred to JCI. *Id.* at 7. He recently had a parole hearing, and he alleges that the hearing officer "was already [compromised] by her careless demeanor," and did not take an interest in his progress or accomplishments while incarcerated. *Id.* He seems to argue that her actions were discriminatory. *Id.*

Allen states that he has continually experienced phone issues, which prevented him from checking on his family. *Id.* at 8. He obliquely alleges, without factual support or attribution to

any particular defendant, that his due process rights and his right to equal protection have been violated. *Id.* He states "Universal Records [sacrificed] me because of how big of a celebrity I am in their company and Ima Black man." *Id.*

Allen appears to allege that his transfer to WCI amounted to cruel and unusual punishment, and was "another strategic way for staff to get a inmate and [compromise] them to kill Plaintiff Marcus Allen." *Id.* at 9. He states, "plaintiff baby brother was killed only to intimidate Marcus mother and sisters [and] to pretend nothing never happened." *Id.* He further alleges that his "whole family was kidnapped and brought into MCTC correctional facility to be [sacrificed] and treated as sex slaves also to be robbed of their future fortune from be being 'universal devil.' One of the biggest celebrities in the [u]niversal [e]mpire." *Id.* at 11.

Finally, Allen states that once his "status of being the next top artist of universal records was leaked," his family stopped answering phone calls. *Id.* at 12. He investigated the matter, and allegedly discovered that his "family was held hostage" in MCTC to be "used as sex slaves" and "to be [sacrificed]." *Id.* He states that he was supposed to be sent home during the Covid-19 pandemic, but instead was "strategically sent to lock up" so that staff could "[compromise] [his] cell buddy to kill [him] in [his] sleep…" *Id.* He states that his "enemies" have stolen "his [identity][,] his music[,] and duplicate him so this position and millions made from his craft would continue being stolen." *Id.*

Allen seeks over 400 million dollars in damages. *Id.* at 4.

  II.   Failure to State a Claim

Here, Allen's Complaint, even construed liberally, cannot provide any basis for relief against any of the named defendants. At its core, a civil rights action under 42 U.S.C. § 1983 is

3

directed to unlawful conduct under color of law. *See Owens v. Baltimore City State's Attorney Office*, 767 F.3d 379 (4th Cir. 2014). Section 1983 of 42 U.S.C. provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Essential to sustaining an action under § 1983 are the presence of two elements. Specifically, the plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 181 (4th Cir. 2009) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Defendants Tunecore, Dennis Ladegaillerie, Universal Records, Kelly Clarkson, Bonnie Hammer, and DistroKid are private citizens or private entities. Nothing in the Complaint makes plausible that these Defendants were acting under the color of state law. As such, all claims as to these Defendants are dismissed.

4

Next, a number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person, and WCI is not a person within the meaning of the statute. All claims against this defendant are dismissed.

Next, under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments, such as DPSCS, are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id*., citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original). Thus, Allen's complaint against DPSCS, a state agency, is barred by the Eleventh Amendment.

Remaining are Defendants Weber, Cornchia, and the Secretary of DPSCS.  Simply put, it is not at all clear from Allen's complaint what claims he seeks to bring against these Defendants, if any.  Factually, the complaint is unclear and disjointed, and the Court cannot make sense of either the factual predicate, the purported claims, or the involvement of the Defendants.  A Complaint that is totally implausible or frivolous, such as this, may be dismissed sua sponte for lack of subject matter jurisdiction pursuant to Fed R. Civ. P 12 (b)(1).  *See Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999); *O'Connor v. United States*, 159 F.R.D. 22 (D. Md. 1994); *see also Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988) (federal district judge has authority to dismiss a frivolous suit on his own initiative).  The allegations asserted by Allen appear to be the product of unclear or delusional thinking that cannot be addressed by this Court.  Allen has not provided any information that might lead to a reasonable conclusion that some plausible cause of action has accrued on his behalf.  As such, claims cannot proceed against the remaining Defendants, and the Complaint must be dismissed in its entirety.

III.   Motion to Appoint Counsel

Allen has also filed a Motion to Appoint Counsel.  ECF No. 3.  In support thereof, he states that he cannot afford a lawyer, he has limited knowledge of the law, his ability to litigate will be hampered by his incarceration, and counsel would be better equipped to present the complex issues in this case.  *Id.* at 1.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163

(4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of the motion, the Court does not find that exceptional circumstances exist which would justify the appointment of counsel at this time. This is especially so because, as outlined above, Allen's Complaint cannot move forward and will be dismissed. The motion is denied.

IV. Conclusion

For the reasons outlined above, Allen's Complaint is dismissed. Allen's Motion to Proceed in Forma Pauperis (ECF No. 2) is granted. Allen's Motion to Appoint Counsel (ECF No. 3) is denied.

A separate Order follows.

Dated: July 31, 2024                     _____/s/_____
                                         Stephanie A. Gallagher
                                         United States District Judge